Flynn Ezra Beckman
(NY Reg. No. 6215545)
  flynn.beckman@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.A.L. and N.G.L.<br><br>　　　Plaintiffs,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES, INC., AN INDEPENDENT LICENSEE OF THE BLUE CROSS AND BLUE SHIELD ASSOCIATION, D/B/A/ ANTHEM BLUE CROSS AND BLUE SHIELD; BARCLAYS SERVICES CORPORATION; and the BARCLAYS SERVICES CORPORATION HDHP PLAN,<br><br>　　　Defendants. | **COMPLAINT**<br><br>Case No.<br><br>Judge |

Plaintiffs R.A.L. and N.G.L., by and through undersigned counsel, hereby complain against Defendants, alleging in totality and alternatively as follows:

### INTRODUCTION

Plaintiff R.A.L. was a participant in an employer-provided health plan and enrolled his child, N.G.L., as a beneficiary in that plan. N.G.L. received 11 months of medical treatment at True North, a residential outdoor behavioral health program. Defendants denied payment for any

of the treatment, requiring Plaintiffs to incur more than $48,000 in out-of-pocket expenses. The Defendants' denials did not contest the medical necessity of N.G.L.'s treatment. Instead, the grounds for the denials were Defendants' claim that True North was not fully accredited by The Joint Commission, the Commission on Accreditation of Rehabilitation Facilities, the National Integrated Accreditation for Healthcare Organizations, or the Council on Accreditation. This litigation thus centers around the narrow issue of whether that ground for the denial was valid.

## PARTIES, JURISDICTION, AND VENUE

1.      This case involves mental health treatment and other confidential medical and mental health information. Using the Plaintiffs' full names and surnames would render them identifiable and would intrude upon private health care matters including matters protected by HIPAA.

2.      Plaintiffs incorporate herein the medical records and claim-related documents previously provided by them to the Defendants.

3.      Plaintiffs are, and were at all times relevant hereto, residents of Connecticut.

4.       R.A.L. is N.G.L.'s parent.

5.      Defendant Barclays Services Corporation ("Barclays") was at all times relevant hereto, R.A.L.'s employer.

6.       As an employee of Barclays, R.A.L. was a participant in the Barclays Services Corporation HDHP Plan, the health benefit plan established by Barclays to provided health benefits for participants (the "Plan").

7.      N.G.L. is R.A.L.'s dependent.

2

8.   As R.A.L.'s dependent, N.G.L. was at all times relevant hereto, a beneficiary under the Plan.

9.   Barclays is the Plan Sponsor.[1]

10.   Based on information and belief, Plaintiffs allege that Barclays contracted with Defendant Anthem Blue Cross and Blue Shield ("Anthem"), an Independent Licensee of the Blue Cross and Blue Shield Association, to be the "Plan Administrator"[2] and "Claims Administrator"[3] for the Plan.

11.   As Claims Administrator, Anthem was responsible for handling the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

12.   The Plan is an employee welfare benefit plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

13.   The Plan is self-insured by Barclays.

14.   Anthem and Barclays are fiduciaries of the Plan as defined by ERISA.[4]

15.   This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses incurred during N.G.L.'s treatment at True North. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B) and in the alternative for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity

---

[1] Benefit Booklet at 103.
[2] Benefit Booklet at 103.
[3] Benefit Booklet at 89.
[4] Benefit Booklet at 103.

Act of 2008 (the "MHPAEA"); as well as an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

16. Jurisdiction is proper in this Court because this action involves a claim under ERISA. 28 U.S.C. § 1331.

17. Venue is appropriate under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this judicial district.

18. Any and all conditions precedent to this action have been met or waived.

## FACTUAL ALLEGATIONS[5]

*Allegations regarding the Plan*

19. Barclays /Anthem issued a booklet titled Medical Benefit Booklet For Barclays Services Corporation HDHP Plan, Administered by Anthem (the "Benefit Booklet") and the Summary of Benefits and Coverage (the "Benefits Guide").

20. Upon information and belief, Plaintiffs allege that the Benefit Booklet and Benefits Guide constitute the official summary plan description for the Plan.

21. In general, the Plan provides benefits for "Covered Services" which are defined as: "Medically Necessary health care services and supplies that are: (a) defined as Covered Services in the Member's Plan, (b) not excluded under such Plan, (c) not Experimental/Investigative and (d) provided in accordance with such plan."[6]

22. "Medical Necessity or Medically Necessary" is defined by the Plan as:

---

[5] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record.  The Administrative Record is incorporated herein by reference.
[6] Benefit Booklet at 90.

An intervention that is or will be provided for the diagnosis, evaluation and treatment of a condition, illness, disease or injury and that is determined by the Claims Administrator to be:

- Medically appropriate for and consistent with the symptoms and proper diagnosis or treatment of the Member's condition, illness, disease or injury;
- Obtained from a Provider;
- Provided in accordance with applicable medical and/or professional standards;
- Known to be effective, as proven by scientific evidence, in materially improving health outcomes;
- The most appropriate supply, setting or level of service that can safely be provided to the Member and which cannot be omitted consistent with recognized professional standards of care (which, in the case of hospitalization, also means that safe and adequate care could not be obtained in a less comprehensive setting);
- Cost-effective compared to alternative interventions, including no intervention. Cost effective does not always mean lowest cost. It does mean that as to the diagnosis or treatment of the Member's illness, injury or disease, the service is: (1) not more costly than an alternative service or sequence of services that is medically appropriate, or (2) the service is performed in the least costly setting that is medically appropriate;
- Not Experimental/Investigative;
- Not primarily for the convenience of the Member, the Member's family or the Provider.
- Not otherwise subject to an exclusion under this Benefit Booklet.[7]

23.     The Plan's definition of "Behavioral Health Care:"

Includes services for Mental Health and Substance Abuse. Mental Health and Substance Abuse is a condition that is listed in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) as a mental health or substance abuse condition.[8]

24.     The Plan's description of benefits for Behavioral Health Care and Substance

Abuse Treatment includes the following provision:

Coverage for the diagnosis and treatment of Behavioral Health Care and Substance Abuse Treatment on an Inpatient or Outpatient basis will not be subject to Deductibles or Coinsurance provisions that are less favorable than the Deductibles or Coinsurance provisions that apply to a physical illness as covered

---

[7] Benefit Booklet at 95.
[8] Benefit Booklet at 88.

under this Benefit Booklet. Services are only covered if received by providers that are both accredited and licensed.[9]

25.    The Plan provides benefits for "Behavioral Health Care and Substance Abuse Treatment," under which:

Covered Services include the following:

- Inpatient Services in a Hospital or any Facility that we must cover by law. Inpatient benefits include psychotherapy, psychological testing, electroconvulsive therapy, and detoxification.

- Residential Treatment in a licensed Residential Treatment Center that offers individualized and intensive treatment and includes:

  - Observation and assessment by a psychiatrist weekly or more often,
  - Rehabilitation and therapy.

. . .

Examples of Providers from whom you can receive Covered Services include:

- Psychiatrist,
- Psychologist,
- Licensed clinical social worker (L.C.S.W.),
- Mental health clinical nurse specialist,
- Licensed marriage and family therapist (L.M.F.T.),
- Licensed professional counselor (L.P.C) or
- Any agency licensed by the state to give these services when we have to cover them by law.[10]

26.    The Policy defines a "Facility" as:

A Facility, including but not limited to, a Hospital, Freestanding Ambulatory Facility, Chemical Dependency Treatment Facility, Skilled Nursing Facility, Home Health Care Agency or mental health Facility, as defined in this Benefit Booklet. The Facility must be licensed, accredited, registered or approved by The Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable, or meet specific rules set by the Claims Administrator.[11]

---

[9] Benefit Booklet at 35.
[10] Benefit Booklet at 35.

27. The Policy defines a "Residential Treatment Center / Facility" as:

A Provider licensed and operated as required by law, which includes:
- Room, board and skilled nursing care (either an RN or LVN/LPN) available on-site at least eight hours daily with 24 hour availability;
- A staff with one or more Doctors available at all times.
- Residential treatment takes place in a structured Facility-based setting.
- The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
- Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
- Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).[12]

*Background of N.G.L.'s medical issues and treatment*

28. Prior to admission to True North, N.G.L. experienced mood issues and experienced suicidal ideation.

29. N.G.L. was diagnosed with unspecified mood disorder, attention-deficit hyperactivity disorder, other specified trauma, and anxiety disorder under the criteria described in the DSM-5.

30. N.G.L. received treatment for these disorders at True North from May 20, 2022 through August 3, 2022.

31. At all times relevant hereto, True North was licensed by the state of Vermont to operate a residential treatment program that provided mental health services for adolescents and young adults.

---

[11] Benefit Booklet at 93.
[12] Benefit Booklet at 98.

32.    True North provided mental health treatment programs that were less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

33.    N.G.L. benefitted from the intensive mental health treatment received at True North and had improvements in each diagnosed condition from the services provided by True North.

34.    True North charged $48,375.00 for the services it provided to N.G.L., which charges were submitted to Anthem.

35.    Because the treatment that True North provided to N.G.L. were covered services under the Plan, including but not limited to because True North qualified as a Provider or Facility under the Plan, Anthem should have provided benefits for those claims.

36.    Instead, Anthem denied all of True North's charges for the services it provided to N.G.L.

37.    In an Explanation of Benefits ("EOB") dated September 10, 2022, Anthem denied the claim for N.G.L.'s treatment at True North with the explanation:

> 707: This service requires preapproval. Your plan doesn't cover this service without it. You are responsible for this amount. You can avoid these charges in the future by asking your doctor if the service requires preapproval.

38.    In a letter dated December 27, 2022, R.A.L. submitted a Level One Member Appeal review of Anthem's benefit denial of the claims submitted by True North.

39.    In the appeal, R.A.L. noted that the Plan's language does not impose a complete reduction of benefits when a member fails to obtain precertification and asked Anthem to conduct a post-service review of the claims submitted by True North.

40.     In the appeal, among other things, R.A.L. expressed a concern that the Plan may be imposing more restrictive limitations on behavioral health benefits than are applied to comparable medical benefits in violation of MHPAEA, and requested Anthem conduct a parity analysis to determine whether on not the Plan was being administered in compliance with MHPAEA and provide R.A.L. with copies of all documents used in the analysis.

41.     Anthem responded to Plaintiffs' Level One Member Appeal with a letter dated January 26, 2023, which denied the appeal with the following explanation:

> Request is being administratively denied. Under the Residential Treatment Center / Facility section listed on page 95 of your Benefit Booklet, A Provider licensed and operated as required by law, which includes:
>
> Room, board and skilled nursing care (either an RN or LVN/LPN) available on-site at least eight hours daily with 24 hour availability;
> A staff with one or more Doctors available at all times.
> Residential treatment takes place in a structured Facility-based setting.
> The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
> Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
> Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).
>
> Requested program, True North Wilderness, is not accredited by any of the above organizations, case is being processed as an administrative benefit denial.

42.     The denial letter was not signed, and was simply from "Your Care Management team."

43.     The denial letter provided no information about the person(s) who were involved with the decision or their qualifications; instead, the letter concluded with the following information:

9

> Information about the Clinical Review
> Here's some information about the clinical review and how we made our decision
>
> An experienced health-care professional handled the review in , on . [sic] The clinical reviewer considered your health, your health plan, clinical criteria or guidelines, and may also have used the latest information from proven research and medical journals during the review.

44.    In responding to Plaintiffs' Level One Member Appeal, Anthem ignored Plaintiffs' request for information and documentation used by Anthem in reviewing the appeal, which Plaintiffs were entitled to receive under ERISA.

45.    Anthem's denial letter also ignored Plaintiffs' request that Anthem conduct a parity analysis under MHPAEA and provide Plaintiffs with the information and documentation that Plaintiffs needed to conduct their own independent analysis.

46.    Additionally, Anthem's denial letter made no reference to preapproval, the basis for denial given in the EOB, and thereby implicitly abandoned the lack of preapproval as a basis for denying the claim.

47.    In a letter dated March 21, 2023, R.A.L. submitted a request for a Level Two Member Appeal.

48.    In this appeal, among other things, R.A.L.:

   a. Noted that the Plan is subject to ERISA, and as such, Anthem was obligated to provide Plaintiffs with certain rights with review of the appeal, including a review that considers all information submitted by Plaintiffs relating to the claim;

   b. Requested Anthem assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices

for outdoor behavioral health programs in the state of Vermont and provided contact information for an expert in the field of intermediate outdoor behavioral health;

c. Pointed out that Anthem was required to provide Plaintiffs with a response that was clear, specifically stated the reasons for the determination, referenced the Plan language on which Anthem's decision was based, and explained what other information Plaintiffs could provide to perfect their claims;

d. Argued that True North met the Plan's definition of a "Provider" of behavioral health services, and the Plan's definition of a "Facility" because it is licensed to provide behavioral health services;

e. Expresses a concern that Anthem may be applying treatment limitations of the kind prohibited by the MHPAEA, and requested Anthem conduct a comparative parity analysis to determine whether or not the Plan is truly being administered in compliance with the MHPAEA and provide Plaintiffs with physical copies of any documentation used in the analysis and details of the analysis so that Plaintiffs could conduct their own independent comparative parity analysis.

49. Anthem sent Plaintiffs a letter dated May 5, 2023, in response to Plaintiffs' Level Two Member Appeal (the "Level Two Denial").

50. The Level Two Denial again "administratively denied" Plaintiffs' appeal.

51.    The Level Two Denial was a verbatim repeat of Anthem's letter denying Plaintiffs' level one member appeal.

52.    The Level Two Denial was also unsigned and whoever sent it was not identified since it was sent from "Your Care Management team."

53.    The Level Two Denial again provided no information about the person(s) who were involved with the decision or their qualifications, and, just as in the prior denial letter, concluded with the following information:

> Information about the Clinical Review
> Here's some information about the clinical review and how we made our decision
>
> An experienced health-care professional handled the review in , on . [sic] The clinical reviewer considered your health, your health plan, clinical criteria or guidelines, and may also have used the latest information from proven research and medical journals during the review.

54.    Anthem's Level Two Denial again ignored Plaintiffs' request for information and documentation used by Anthem in reviewing the appeal, which Plaintiffs were entitled to receive under ERISA.

55.    Anthem's Level Two Denial also completely ignored Plaintiffs' request that Anthem conduct a parity analysis under MHPAEA and provide Plaintiffs with the information and documentation that Plaintiffs needed to conduct their own independent analysis.

56.    Again, Anthem's Level Two Denial made no reference to preapproval, the basis for denial given in the EOB.

57.    As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

12

58. The denial by Anthem/the Plan of benefits solely and directly caused Plaintiffs to incur $48,375.00 for N.G.L.'s treatment at True North.

59. After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

60. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

61. Plaintiffs do not seek double recovery and plead the first and second causes of action in the alternative.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

62. All allegations of this Complaint are incorporated here as though fully set forth herein.

63. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

64. Anthem and the Plan wrongly excluded coverage for N.G.L.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders.

65.    ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

66.    Anthem's denial letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Anthem did not engage with or respond to the issues presented in the appeals, did not meaningfully address the arguments or concerns raised during the appeal process, did not identify the names or qualifications of the person(s) who participated in reviewing Plaintiffs' appeals, and did not provide the documents or information which Anthem was required by law to provide.

67.    Anthem and Barclays breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in N.G.L.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of N.G.L.'s claims.

68.    The actions of Anthem/the Plan/Barclays in denying payment for N.G.L.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

### (Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))

69.    All allegations of this Complaint are incorporated here as though fully set forth herein.

14

70. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Anthem's and Barclays' fiduciary duties.

71. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

72. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

73. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

74. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for N.G.L.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, inpatient hospice services, etc.

75. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by Defendants for treatment for N.G.L. at True North.

76. Upon information and belief, Anthem/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because Anthem declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

77. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

78. Plaintiffs expressly requested Anthem perform a MHPAEA analysis of the Plan. They expressed serious concern that Anthem was violating the statute and asked for a response using specific and direct examples. Anthem failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letters or EOBs.

79. These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

> (a)    A declaration that the actions of Defendants violate the MHPAEA;
>
> (b)    An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

16

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)     An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

80.    In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1.  Judgment in the total amount owed for N.G.L.'s treatment at True North;

2.  Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 22nd day of May 2026.

/s/ *Flynn Ezra Beckman*
Flynn Ezra Beckman, (NY Reg. No. 6215545)
flynn.beckman@chrisjen.com
CHRISTENSEN & JENSEN P.C.
257 East 200 South Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorneys for Plaintiff*

County of Plaintiff's Residence:
Fairfield County, Connecticut